UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

15 CV 478 

------------------------------------------------------------x

ALESSANDRA COLTELLI, DANIEL SCHUBMEHL
and SAMANTHA PATHE, on behalf of themselves and
others similarly situated,

                      Plaintiffs,

v.

SARMA MELNGAILIS, ONE LUCKY DUCK HOLDINGS,
LLC, PURE FOOD AND WINE, LLC, CGM 54 IRVING, LLC,
d/b/a PURE FOOD AND WINE, ONE LUCKY DUCK
ECOMMERCE, LLC, JAKE LEVINE, and JOHN DOES
1 through 9, jointly and severally,

                      Defendants.

------------------------------------------------------------x

**CLASS ACTION COMPLAINT**

JUDGE DANIELS



Plaintiffs, ALESSANDRA COLTELLI, DANIEL SCHUBMEHL and SAMANTHA PATHE, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE ACTION

1. This lawsuit seeks to recover unpaid wages owing to plaintiffs and their similarly situated coworkers. Plaintiffs are hourly employees who worked for defendants SARMA MELNGAILIS, ONE LUCKY DUCK HOLDINGS, LLC, PURE FOOD AND WINE, LLC, CGM 54 IRVING, LLC, d/b/a PURE FOOD AND WINE, ONE LUCKY DUCK ECOMMERCE, LLC, JAKE LEVINE, and John Does #1-9 (jointly referred to as "defendants").

2. Plaintiffs are seeking to recover wages for work performed between December 1, 2014 and January 16, 2015.

3. Upon information and belief, defendants collectively constitute an enterprise, as defined by 29 U.S.C. § 203, known as and hereinafter referred to as "One Lucky Duck," that operates four related businesses located in New York City, New York.

    a. Defendants operate a dine-in restaurant doing business as "Pure Food and Wine," located at 54 Irving Place, New York City, New York 10003.

    b. Defendants also operate two takeout restaurants and juice bars doing business as "One Lucky Duck Juice & Takeaway," located at 125 East 17th Street, New York City, New York, 10003 (hereinafter "One Lucky Duck Gramercy") and 75 Ninth Avenue, New York City, New York 10011 (hereinafter "One Lucky Duck Chelsea").

    c. Defendants operate a food production facility (hereinafter "One Lucky Duck Production") that manufactures packaged foods that are available for purchase on defendants' E-Commerce website "OneLuckyDuck.com." One Lucky Duck Production also manufactures foods that are available for purchase at both One Luck Duck Juice & Takeaway locations, as well as at Pure Food and Wine.

4. Upon information and belief, defendants have failed to pay plaintiffs and their coworkers, employees of One Lucky Duck, for all or part of the wages earned between December 1, 2014 and January 16, 2015.

5. Since on or about December 1, 2014 defendants have deprived plaintiffs and others similarly situated of their wages, in whole or in part, in violation of the Fair Labor Standards Act ("FLSA") and 29 C.F.R. § 531.35.

6. Since on or about December 1, 2014, defendants have made unlawful deductions from the wages of plaintiffs and others similarly situated, in violation of the New York Labor Law, Article 6, § 193.

7. Since on or about December 1, 2014, defendants have unlawfully withheld gratuity payments from plaintiff Schubmehl and other similarly situated tipped employees.

8. Since on or about December 1, 2014, defendants have deprived plaintiffs of minimum wages, in violation of the FLSA and New York Labor Law ("NYLL"), Article 19 §§

215, *et seq.*

9. Plaintiffs also bring this action on behalf of themselves and other similarly situated former employees who worked for defendants and were terminated without cause, as part of, or as the result of, plant closings, mass layoffs and terminations ordered by defendants and who were not provided 60 days advance written notice of their terminations by defendants, as required by the New York WARN Act, NYLL § 860, *et seq.*

## JURISDICTION AND VENUE

10. With respect to the federal claims ascertained herein, the Court's original jurisdiction is invoked pursuant to 28 U.S.C. § 1331 since this case is brought under the FLSA, 29 U.S.C. §§ 201, *et seq.*

11. With respect to the state claims ascertained herein, the Court's supplemental jurisdiction is invoked pursuant to 28 U.S.C. § 1367(a), as the state claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

12. Defendant ONE LUCKY DUCK HOLDINGS, LLC, and ONE LUCKY DUCK ECOMMERCE LLC, are subject to personal jurisdiction in the State of New York, since they are domestic limited liability companies incorporated in the State of New York with their registered corporate address at 38 East 21st Street, New York, New York 10010, and 499 Park Avenue, New York, New York 10022, respectively. Both ONE LUCKY DUCK HOLDINGS, LLC, and ONE LUCKY DUCK ECOMMERCE LLC conduct business in the County of New York.

13. Defendants PURE FOOD AND WINE, LLC, and CGM 54 IRVING LLC, d/b/a PURE FOOD AND WINE are Delaware companies authorized to do business in the State of New York and therefore subject to personal jurisdiction.

14. Upon information and belief, defendant SARMA MELNGAILIS is a resident of the State of New York. Defendant MELNGAILIS is the President/CEO of ONE LUCKY DUCK HOLDINGS, LLC, ONE LUCKY DUCK ECOMMERCE, LLC, PURE FOOD AND WINE LLC,

and is the principal member of CGM 54 IRVING LLC, d/b/a PURE FOOD AND WINE.

15. Upon information and belief, defendant JAKE LEVINE is a resident of Kings County, New York.

16. Upon information and belief, based on information provided by plaintiffs, former employees of defendants, defendants are collectively an enterprise engaged in commerce whose annual gross volume of sales made, or business done, is in excess of $500,000.

   a. Defendants' restaurant, Pure Food and Wine, is located at 54 Irving Place in Manhattan and specializes in high-end raw and vegan food. Pure food and Wine seats approximately eighty customers at time indoors, with seating for an additional seventy patrons outside. Pure food and Wine serves lunch and dinner, as well as brunch on Saturdays and Sundays every week. In addition, Pure Food and Wine regularly purchases materials from out-of-state vendors, and plaintiffs regularly handle these out-of-state supplies. In particular, Pure Food and Wine sells wine that is imported from all over the world, including states within the United States.

   b. Defendants' industrial kitchen, One Lucky Duck Production, is located at 630 Flushing Avenue, Brooklyn, New York 11206, and manufactures packaged foods for sale through defendants' E-Commerce website, OneLuckyDuck.com, as well as at Pure Food and Wine and One Lucky Duck Juice & Takeaway. One Lucky Duck Production receives goods from out-of-state vendors that employees use in manufacturing and preparing products. For instance, maple syrup from Vermont. One Lucky Duck Production also ships goods purchased on its website to purchasers throughout the United States via Federal Express.

   c. One Lucky Duck Juice & Takeaway engages in retail sales of the goods manufactured at One Lucky Duck Production, including those goods with component parts that have traveled in interstate commerce.

4

    d. Thus, based on plaintiffs' personal knowledge of defendants' business, as well as upon information and belief, defendants are an enterprise engaged in commerce as defined by 29 U.S.C. § 203.

17. Venue is proper in the Southern District because acts and/or omissions giving rise to the claims herein alleged took place at Pure Food and Wine, located at 54 Irving Place, New York, New York.

## THE PARTIES

### DEFENDANTS

18. Upon information and belief, defendants SARMA MELNGAILIS, ONE LUCKY DUCK HOLDINGS, LLC, PURE FOOD AND WINE, LLC, CGM 54 IRVING, LLC, d/b/a PURE FOOD AND WINE, ONE LUCKY DUCK ECOMMERCE, LLC and JAKE LEVINE jointly and severally employed plaintiffs and others similarly situated at all times relevant to this complaint. Each defendant has had, individually and jointly, substantial control over plaintiffs' wages and working conditions.

19. At all times relevant to this Complaint, One Lucky Duck has maintained a centralized payroll department for all of its employees at all of its locations. Defendants Melngailis and Levine have jointly and severally controlled all aspects of payroll. Documents and computers containing information for One Lucky Duck's centralized payroll have been kept at the Pure Food and Wine location at 54 Irving Place, New York City, New York.

20. Defendants are part of a single integrated enterprise that jointly employed plaintiffs at all times relevant to this complaint, as defendants are engaged in activities performed for a common business purpose as defined by 29 U.S.C. § 203(r).

21. Upon information and belief, SARMA MELNGAILIS and John Does #1-10 have been members of ONE LUCKY DUCK HOLDINGS, LLC, PURE FOOD AND WINE, LLC, CGM 54 IRVING, LLC, d/b/a PURE FOOD AND WINE and ONE LUCKY DUCK

ECOMMERCE, LLC, within the meaning of New York Limited Liability Company Law § 609 at all times relevant to this action.

22. Upon information and belief, all defendants have had control over all employment practices at all of the One Lucky Duck business at all times relevant to this matter, including wages, scheduling and the hiring and firing of employees. Defendants, jointly and severally, are covered employers within the meaning of 29 U.S.C. § 203(d) and NYLL § 190.

23. Upon information and belief, defendants constitute an "employer" as defined by the New York WARN Act, NYLL § 860 *et seq.* and title 12 of the Official Compilation of Codes, Rules & Regulations of the State of New York ("NYCCR") § 921-1.1.

**PLAINTIFFS**

ALESSANDRA COLTELLI

24. ALESSANDRA COLTELLI ("Coltelli") is an adult individual who is a resident of Queens County, State of New York.

25. Coltelli was employed as a line cook and hostess by defendants at defendants' Pure Food and Wine location from on or about March 17, 2014, until January 12, 2015.

26. As an hourly kitchen employee and hostess for defendants, Coltelli is a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL § 190, and not exempt by FLSA, 29 U.S.C. § 213.

27. From December 1, 2014, through December 14, 2014, Coltelli worked 82.38 hours.

28. From December 15, 2014, through December 28, 2014, Coltelli worked 61.13 hours.

29. Between December 29, 2014, and January 12, 2015, Coltelli worked approximately 85 hours. However, the actual number of hours worked is unknown to Coltelli at this time as a result of the defendants' failure to furnish a paycheck for that period.

30. Since on or about July 1, 2014, Coltelli and her coworkers were paid on a bi-weekly

6

basis, every other Friday.

31. Coltelli was compensated on an hourly basis at the rate of $11.00 as a line cook and $12.00 per hour as a hostess.

32. Coltelli and her coworkers were supposed to receive their biweekly paychecks on January 2, 2015 for the pay period of December 15, 2014, through December 28, 2014.

33. On January 8, 2015, Coltelli and her coworkers became aware that paychecks that had been issued on January 2, 2015, were bouncing due to inadequate funds.

34. On January 9, 2015, Coltelli and a group of her coworkers met with defendant Levine to discuss their bouncing paychecks. Levine assured them that new checks would be issued the following Monday, January 12, 2015.

35. On January 12, 2015, defendant Levine held a meeting with a substantial number of the employees at Pure Food and Wine, including Coltelli. Defendant Levine advised the group of employees that he was in possession of reissued paychecks covering the period of December 15, 2014, through December 28, 2014. Defendant Levine advised the group of employees that he would be distributing the checks throughout the workday. Defendant Levine assured Coltelli and her coworkers that the reissued checks were good and that there were adequate funds to satisfy the entire payroll. Defendant Levine encouraged Coltelli and her coworkers to continue to work. When employees inquired about the company's ability to satisfy payroll for the period of December 29, 2014 through January 10, 2015, (due to be paid January 16, 2015) Levine stated that the company would forgo paying vendors, if necessary, in order to ensure payroll was satisfied.

36. Upon information and belief, in the early afternoon of January 12, 2015, several employees immediately attempted to cash or deposit their reissued checks and discovered that there were still unsufficient funds to satisfy the amounts owing.

37. Upon information and belief, at some point during the workday on January 12, 2014, defendant Levine was instructed by defendant Melngailis to stop distributing payroll checks

7

due to insufficient funds. As a result, Coltelli and many of her coworkers were never given a reissued check for the payroll period of December 15, 2014, through December 28, 2014.

38. On January 12, 2015, as a result of defendants' failure to pay wages, Coltelli and her coworkers were terminated from their employment.

39. To date, Coltelli has not been paid for any work performed from December 1, 2014, through January 12, 2015.

40. Since January 12, 2015, Pure Food and Wine has remained closed.

### DANIEL SCHUBMEHL

41. Daniel Schubmehl ("Schubmehl") is an adult individual who is a resident of Kings County, State of New York.

42. Schubmehl was employed as a server and bartender by defendants at their Pure Food and Wine location from on or about July 1, 2006 until January 12, 2015.

43. As a server and bartender for defendants, Schubmehl is a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL § 190, and not exempt by FLSA, 29 U.S.C. § 213.

44. As a server and bartender, Schubmehl regularly and customarily received gratuities as part of his compensation.

45. Defendants maintain a tip pool to distribute gratuities between eligible food service workers. Pursuant to the defendants' tip pool procedures, each tipped employee is required to turn over all cash tips to the bartender throughout each shift. Credit card tips are distributed with cash tips pursuant to a point system to eligible tip pool participants on a biweekly basis with their payroll checks.

46. Defendants take a tip credit towards the minimum wage of tipped employees at Pure Food and Wine.

47. Between December 29, 2014 and January 12, 2015, Schubmehl worked

approximately 50 hours.

48. On January 12, 2015, Schubmehl was present with Coltelli and other employees during the meeting with defendant Levine.

49. On January 12, 2015, Schubmehl became aware that the checks that had been reissued by Levine were bouncing and that there were insufficient funds to satisfy the outstanding payroll obligations of One Lucky Duck.

50. On January 12, 2015, as a result of defendants' failure to pay wages, Schubmehl and his coworkers were constructively terminated from their employment with defendants at Pure Food and Wine.

51. To date, Schubmehl has not been paid any wages or tips for work performed between December 29, 2014, and January 12, 2015, including hourly wages and gratuities.

52. Upon information and belief, the majority of the tipped employees at Pure Food and Wine have not been paid any hourly wages or tips for the period of December 15, 2014, through January 12, 2015.

53. Upon information and belief, defendants have unlawfully appropriated tips form Schubmehl and other similarly situated tipped employees at Pure Food and Wine for the period of December 15, 2014, through January 12, 2015.

## SAMANTHA PATHE

54. Samantha Pathe ("Pathe") is an adult individual residing in Queens County, State of New York.

55. Pathe was employed as a food preparer and packager by defendants at their One Lucky Duck Production facility from on or about April 15, 2013, until January 16, 2015.

56. As a food preparer and packager for defendants, Pathe is a covered employee as defined by FLSA, 29 U.S.C. § 203(e) and NYLL § 190, and not exempt by FLSA, 29 U.S.C. § 213.

57. Throughout her employment with defendants, Pathe was compensated on an hourly basis at the rate of $12.00 per hour.

58. Since on or about July 1, 2014, Pathe and her coworkers were paid on a biweekly basis.

59. Between December 29, 2014, and January 15, 2015, Schubmehl worked approximately 95 hours.

60. To date, Pathe has not been paid for any of the hours worked between December 29, 2014 and January 16, 2015.

61. On January 13, 2015, Pathe and the 9 other employees working at the One Lucky Duck Production facility were advised by their supervisor that One Lucky Duck had insufficient funds to satisfy payroll which had caused a shutdown of the restaurants in Manhattan. Pathe's supervisor further advised that One Lucky Duck's accountant, defendant Levine, had instructed that employees would still be required to show up for their scheduled shifts or risk their eligibility for unemployment.

62. Pathe and her coworkers continued to show up for work through January 16, 2015.

63. On January 16, 2015, One Lucky Duck failed to pay Pathe or her coworkers for any work performed during the immediately preceding pay period.

64. While Pathe's paycheck for the period covering December 15, 2014, through December 28, 2014, had cleared, she is aware that 8 of her coworkers have not been paid for that period or the subsequent payroll period, as of the date of the filing of this action.

65. On January 16, 2015, Pathe and her coworkers were terminated as a result of defendants' failure to pay wages and announcement concerning the lack of funds to satisfy payroll.

## FLSA COLLECTIVE ACTION ALLEGATIONS

66. Plaintiffs bring their first and second claims for relief as a collective action under Section 16(b), 29 U.S.C. § 216(b) of the FLSA on behalf of all non-exempt individuals employed

by defendants at (1) Pure Food and Wine; (2) One Lucky Duck Gramercy; (3) One Lucky Duck Chelsea; and (4) One Lucky Duck Production between on or about December 1, 2014 and January 16, 2015 that elect to opt in to this action. Such plaintiffs are hereinafter referred to as the "FLSA Collective Plaintiffs."

67. At all times relevant to this complaint, and upon information and belief, plaintiffs and the FLSA Collective Plaintiffs are, and/or have been, similarly situated, have had substantially similar compensation provisions, and have been subject to defendants' policies and practices of knowingly, intentionally and willfully (1) failing to pay wages earned in whole or in part; (2) failing to pay minimum wages; and (3) knowingly, intentionally and willfully withholding and appropriating gratuities received by tipped employees. Thus, the claims of plaintiffs are essentially the same as those of the FLSA Collective Plaintiffs.

68. For notice and all other purposes related to claims brought under 29 U.S.C. § 216(b) of the FLSA, the names and addresses of the FLSA Collective Plaintiffs are available from defendants' records. Notice can be provided via first class mail to the last address known to defendants for each of the FLSA Collective Plaintiffs.

## PLAINTIFFS' NYLL ALLEGATIONS

69. Plaintiffs bring their third and fourth, claims for relief pursuant to the NYLL.

70. Defendants committed the acts alleged in this complaint knowingly, intentionally and willfully, and knew that the violation of NYLL would economically injure plaintiffs. .

71. Defendants unlawfully failed to pay all plaintiffs at the minimum wage rate as provided by NYLL.

72. Defendants unlawfully deducted and appropriated gratuities received by plaintiff Schubmehl between December 29, 2014, and January 12, 2015.

73. Defendants unlawfully deducted wages from plaintiffs by failing to pay them wages earned, in whole or in part, between December 1, 2014, and January 16, 2015.

11

74. Defendants committed the foregoing acts against plaintiffs.

## NEW YORK WARN ACT CLASS ACTION ALLEGATIONS

75. Class Plaintiffs Coltelli, Schubmehl and Pathe (the "NY Class Plaintiffs") bring their fifth claim for relief for violations of the New York State Worker Adjustment and Retraining Notification Act ("NY WARN Act"), NYLL§ 860 *et seq.*, on behalf of themselves and a class of similarly situated former employees pursuant to the NY WARN Act, NYLL § 860 *et* seq., and the Federal Rules of Civil Procedure, Rule 23, who worked for defendants at Pure Food and Wine, One Lucky Duck Gramercy, One Lucky Duck Chelsea and One Lucky Duck Production, and were terminated without notice between January 12, 2015 and January 16, 2015 (the "NY WARN Class").

76. Upon information and belief, defendants employed approximately 85 individuals between Pure Food and Wine, One Lucky Duck Gramercy, One Lucky Duck Chelsea and One Lucky Duck Production.

77. By January 12, 2015, defendants had failed to pay the NY WARN Class for between one and three payroll periods of work performed for defendants.

78. Between January 12, 2015, and January 16, 2015, defendants advised the NY WARN Class that defendants would be unable to satisfy payroll obligations, resulting in the termination of all of the employees comprising the NY WARN Class.

79. The persons in the NY WARN Class identified above ("NY WARN Class Members") are so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown to NY Class Plaintiffs at this time, defendants' are in sole possession of the information necessary to determine the exact number of potential class members.

80. On information and belief, the identity of the members of the class and the recent residence address of each of the NY WARN Class Members is contained in the payroll records of defendants which are maintained on defendants' computers.

81. On information and belief, the rate of pay and benefits that were being paid by defendants to each NY WARN Class Member at the time of their termination is contained in the payroll records of defendants which are maintained on defendants' computers

82. Common questions of law and fact exist as to members of the NY WARN Class, including, but not limited to, the following:

　　a. whether the members of the NY WARN Class were employees of defendants;

　　b. whether defendants unlawfully terminated the employment of the members of the NY WARN Class without cause on their part and without giving them 60 days advance written notice; and

　　c. whether defendants unlawfully failed to pay the NY WARN Class members 60 days wages and benefits as required by the NY WARN Act.

83. The NY Class Plaintiffs' claims are typical of those of the NY WARN Class. The NY Class Plaintiffs, like other NY WARN Class members, were employed by defendants' at their four business locations in New York City and were terminated between January 12, 2015, and January 16, 2015, as a result of defendants' failure to pay wages and announcement that defendants had inadequate funds to satisfy payroll.

84. The NY Class Plaintiffs will fairly and adequately protect the interests of the NY WARN Class. The Class Plaintiffs have retained counsel competent and experienced in complex class actions on behalf of employees, including the NY WARN Act, the federal WARN Act, other similar state laws, and employment litigation.

85. Class certification of these claims is appropriate under Fed. R. Civ. P 23(b)(3) because questions of law and fact common to the NY WARN Class predominate over any questions affecting only individual members of the NY WARN Class, and because a class action is superior to other available methods for the adjudication of this litigation. In the instant matter, members of the NY WARN Class do not have the financial resources to effectively pursue their

claims against defendants on an individual basis. Members of the NY WARN Class were restaurant workers whose termination arose out of the defendants' failure to pay them wages for up to six weeks.

86.     Pursuit of the NY WARN Act claims as a class action is the most method of adjudication as it will preserve judicial resources in avoiding unnessesarily duplicative litigation with potentially inconsistent outcomes.

87.     The NY Class Plaintiffs intend to send notice to all members of the NY WARN Class pursuant to Rule 23 of the FRCP.

### FIRST CLAIM FOR RELIEF

**FLSA Minimum Wage Claim, 29 U.S.C. § 201 *et seq.*
Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs**

88.     Plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

89.     In light of defendants' unlawful failure to pay the required minimum wage, plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, seek and are entitled to recover damages for their unpaid minimum wage compensation, liquidated damages as provided by the FLSA, attorneys' fees and costs, together with such other relief as this Court deems just and proper.

### SECOND CLAIM FOR RELIEF

**FLSA Unlawful Kickbacks 29 U.S.C. § 201 *et seq.*; 29 CFR 531.35,
Brought by Plaintiffs on Behalf of Themselves and the FLSA Collective Plaintiffs**

90.     Plaintiffs, on behalf of themselves and members of the FLSA Collective Plaintiffs, repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

91.     Throughout the period covered by the applicable statute of limitations, defendants have knowingly taken unlawful kickbacks in violation of FLSA and the supporting regulations of the U.S. Department of Labor. Specifically, defendants have withheld wages from plaintiffs and

the FLSA Collective Plaintiffs, in whole or in part, that were earned between December 1, 2014 and January 16, 2015.

92. Defendants' failure to pay plaintiffs and the FLSA Collective Plaintiffs all wages earned between December 1, 2014 and January 16, 2015 constitutes and unlawful deduction from their wages.

93. Plaintiffs seek and are entitled to recover damages for their unpaid compensation, liquidated damages as provided by the FLSA, attorneys' fees and costs, together with such other relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF

**New York State Minimum Wage Claim, NYLL § 650 *et seq.*,
Brought by Plaintiffs**

94. Plaintiffs repeat, reallege and incorporate each and every preceding paragraph as if set forth fully herein.

95. By failing to pay plaintiffs any wages for hours worked between December 1, 2014 and January 16, 2015, defendants failed to pay plaintiffs at rate not less than the New York State minimum wage for those hours.

96. In light of defendants' unlawful failure to pay the required minimum wage, plaintiffs seek and are entitled to recover their respective unpaid compensation, damages pursuant to NYLL, Article 6, § 198, attorneys' fees, costs, pre- and post-judgment interest, together with such other relief as this Court deems just and proper.

### FOURTH CLAIM FOR RELIEF

**Unlawful Deductions, NYLL § 193,
Brought by Plaintiffs**

97. Plaintiffs repeat, reiterate, and incorporate each and every preceding paragraph as if set forth fully herein.

98. Throughout the period covered by the applicable statute of limitations, defendants have knowingly taken unlawful deductions in violation of NYLL § 193.

99. Plaintiffs seek and are entitled to recover their respective unpaid compensation, damages pursuant to NYLL, Article 6, § 198, attorneys' fees, costs, pre- and post-judgment interest, together with such other relief as this Court deems just and proper.

## FIFTH CLAIM FOR RELIEF

### NY WARN Act Claim, NYLL § 860 *et seq.*,
### Brought by Plaintiffs

100. Plaintiffs repeat, reiterate, and incorporate each and every preceding paragraph as if set forth fully herein.

101. Plaintiffs and similarly situated employees who worked for defendants at Pure Food and Wine, One Lucky Duck Gramercy, One Lucky Duck Chelsea and One Lucky Duck Production are "affected employees," as defined by the NY WARN Act, NYLL § 860-a.

102. Defendants terminated the employment of plaintiffs and other similarly situated employees, pursuant to a "plant closing", "mass layoff", or "relocation" as defined in the NY WARN Act, NYLL § 860-a, between January 12, 2015, and January 16, 2015.

103. At all times relevant to this Complaint, defendants constituted an employer as defined in the NY WARN Act, NYLL § 860-a.

104. Defendants violated the NY WARN Act by ordering a "Plant Closing", "mass layoff" or "relocation" in New York State without giving written notice at least 90 days before the order took effect to (1) the employees affected by the order, and (2) the New York State Department of Labor, the local workforce investment board, and the chief elected official of each city and county government within which the mass layoff, relocation or termination occurred.

105. As a result of defendants' violation of the NY WARN Act, the other similarly situated New York employees are entitled to damages equal to 60 days wages and benefits.

16

106. As a result of defendants' violation of the NY WARN Act, defendants should be assessed a civil penalty of not more than $500 for each day of the violation.

107. Plaintiffs have incurred, and the other similarly situated employees will incur, attorneys' fees in prosecuting this claim and are entitled to an award of attorneys' fees.

## RELIEF SOUGHT

**WHEREFORE**, plaintiffs, on behalf of themselves and the FLSA Collective Plaintiffs, request relief as follows:

A. Designation of this action as a collective action for the purpose of the claims brought on behalf of the FLSA Collective Plaintiffs, along with prompt issuance of opt-in notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the opt-in class;

B. Designation of plaintiffs as representatives of the FLSA Collective Plaintiffs;

C. An order declaring that defendants jointly and severally violated the FLSA;

D. An order declaring that defendants' violations of the FLSA were willful;

E. An order declaring that defendants jointly and severally violated the NYLL;

F. An award of minimum wage compensation under the FLSA and NYLL;

G. An award of overtime compensation under the FLSA and NYLL;

H. An award for unlawful kickbacks under the FLSA;

I. An award for unlawful deductions under NYLL;

J. An award of liquidated damages pursuant to the FLSA and to the maximum extent allowed under law;

K. An award of damages to the maximum extent allowed under law for violations of NYLL;

L. An order declaring that the NY WARN Act claims may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, and direct that

reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the NY WARN Class;

M. An order declaring that defendants jointly and severally violated the NY WARN Act;

N. An order declaring that defendants' NY WARN Act violations were willful and knowing;

O. An award, to the NY WARN Class, of back pay and the value of any benefits lost as a result of the layoffs pursuant to NYLL § 860;

P. An award of any other damages available under the applicable law to the NY WARN Class for defendant's NY WARN Act violations ;

Q. All penalties available under the applicable laws;

R. Attorneys' fees and costs of the suit pursuant to 29 U.S.C. § 216, NYLL § 663, NYLL § 860 and all other applicable statutes;

S. Interest as provided by law; and

T. Such other relief as this Court deems just and proper.

## JURY TRIAL

Plaintiffs demand a jury trial for all causes of action and claims for which he has a right to a jury trial.

Date:  New York, New York
       January 22, 2015

Respectfully submitted,

EISNER & ASSOCIATES, P.C.

By: Benjamin N. Dictor
Attorneys for Plaintiffs
113 University Place
New York, NY 10003
(212) 473-87000